IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: § | Case No. 05-21207 | |
| ASARCO LLC, et al. § | Chapter 11 | |
| Debtors. § | (Jointly Administered) | |
| ASARCO LLC, § | | |
| Plaintiff, § | | |
| v. § | Adversary No. 07-02011 | |
| AMERICAS MINING CORPORATION, § *et al.*, § | | |
| Defendants. § | | |

**DEFENDANTS AMERICAS MINING CORPORATION
AND ASARCO INCORPORATED'S REPLY TO PLAINTIFF ASARCO LLC'S
<u>RESPONSE BRIEF REGARDING THE TAX SHARING AGREEMENT</u>**

# I.
## SUMMARY OF ARGUMENT

Defendants Americas Mining Corporation ("AMC") and ASARCO, Inc. ("New ASARCO") (together, "Parent"), file this Reply to Plaintiff ASARCO LLC's Response Brief Regarding the Tax Sharing Agreement ("Debtor's TSA Response"), and in support would respectfully show as follows:

Unnecessarily employing inflammatory language and unfairly attributing mal-intent to Parent's legal arguments,[1] Debtor's TSA Response amounts to little more than a diatribe against Parent's legal positions.[2] Moving past Debtor's invective, what becomes clear is that Debtor's argument is flawed because it assumes Debtor will prevail on the very issue presently before the Court: whether federal or state law governs the question of which party owns the Tax Refund in light of New ASARCO's status as the successor-in-interest to ASARCO NJ for federal tax purposes due to the F reorganization, as well as ASARCO LLC's status as a disregarded entity. Parent has submitted extensive summary judgment briefing explaining why federal law

---

[1] *See* Debtor's TSA Response at 2 (alleging AMC's TSA Brief contains "egregious misrepresentations and illogical arguments"); *id*. (referring to AMC's TSA Brief as "a morass"); *id.* at 4 ("one of Parent's most flagrant misrepresentations"); *id.* at 6 (describing Parent's argument as a "gross mischaracterization"); *id.* at 7 (alleging that Parent "attempts to hide" certain aspects of the TSA from the Court); *id.* at 8 (charging that Parent's argument "perverts" the TSA); *id.* at 11 ("Parent's contention is spurious, at best."); *id.* at 11 (describing Parent's argument as "nearly incomprehensible"); *id.* at 12 (claiming that Parent's argument is "obviously ridiculous"); *id.* at 14 (stating that Parent's "argument is absurd"); *id.* (referring to Parent's argument as "tiresome"); *id.* at 16 (claiming that Parent has "misrepresent[ed] . . . federal tax law" to the Court); *id.* at 16-17 (alleging that Parent is intentionally "attempt[ing] to confuse the Court"); *id.* at 17 ("Parent merely repeats the same illogical assertions about Debtor's status as a disregarded entity," which is the issue to be decided by the Court); *id.* at 18 (claiming that Parent's arguments regarding recoupment and equity constitute a "misrepresentation" to the Court); *id.* at 19 (claiming that Parent's legal argument is merely a "desperate attempt by Parent to delay summary judgment in favor of Debtor"); *id.* at 20 (concluding that "Parent's TSA Brief is replete with misrepresentations and illogical arguments in an obvious effort to obscure . . . facts" from the Court); *id.* ("Parent's spurious attempt to argue [against Debtor's position] is a waste of time and resources.").

[2] *See Whitehead v. Food Max of Mississippi, Inc.*, 332 F.3d 796, 805 (5th Cir. 2003), *cert. denied*, 540 U.S. 1047 (2003) ("Filing otherwise legitimate documents that use abusive language toward opposing counsel could . . . violate [Fed. R. Civ. P. 11]."); *see also* Texas Lawyer's Creed, Part III (Nos. 1, 9, 10) and Part IV (No. 3).

governing F reorganizations and disregarded entities dictates that Parent owns the Refund.[3] Parent's TSA Brief was filed, as requested by the Court, in an effort to clarify the terms of the tax sharing agreement (which is composed of the "TSA" and the "Amendment"[4]) and to explain how its terms are consistent with the conclusion that Parent owns the Refund under federal law.

Debtor may disagree with Parent's legal position, as it is entitled to, but Parent filed each of these briefs in good faith, only after considered analysis of the relevant facts and issues, and in a sincere effort to assist the Court with its analysis of this complicated and novel issue of federal tax law. Parent stands by the arguments and authorities presented in those briefs, and respectfully disagrees with Debtor's contention that state law allows Debtor to recover the Refund, and that the TSA and Amendment are irrelevant to that analysis. Parent files this Reply in order to address briefly certain points raised in Debtor's TSA Response.

## II.
### ARGUMENT AND AUTHORITIES

A.  **Parent's right to the Refund derives from federal law, and the Amendment confirms the parties' expectation that Parent would receive any refunds related to ASARCO NJ's prior operations.**

In asserting that the TSA and the Amendment are irrelevant to the question of which entity owns the Refund, Debtor assumes victory on the very issue before the Court: whether Delaware state law or federal law specific to F reorganizations and disregarded entities

---

[3] The arguments and authorities supporting Parent's position as to the controlling federal law – which requires the Refund be paid to New ASARCO, as the successor-in-interest to ASARCO NJ and the parent company of a wholly-owned disregarded entity – are fully set forth in Parent's summary judgment briefing and are incorporated herein for all purposes. *See* Response of Defendants Americas Mining Corporation and ASARCO Incorporated to Plaintiff ASARCO LLC's Motion for Summary Judgment [Docket No. 100].

[4] The tax sharing agreement consists of two integrated documents: the January 22, 2004 Tax Sharing Agreement (the "TSA") between AMC and ASARCO, Incorporated, a New Jersey corporation ("ASARCO NJ"), and the February 17, 2005 First Amendment to Tax Sharing Agreement (the "Amendment") among AMC, New ASARCO and ASARCO LLC. Debtor does not contest Parent's argument that these documents must be construed as one integrated agreement.

determines the question of who owns the Refund.[5] Debtor relies on generic Delaware state law concerning mergers and property rights in an attempt to claim ownership of the Tax Refund. But none of the authorities on which Debtor relies concern F reorganizations or disregarded entities. Debtor has not provided the Court with any case that holds (even implicitly) that a disregarded entity "owns" tax refunds related to losses incurred prior to undergoing an F reorganization. Moreover, Debtor's argument is inconsistent with cases holding that federal law governs the question of Debtor's independent standing for federal tax purposes.[6] Moreover, Parent has presented the Court with numerous authorities explaining why federal law concerning disregarded entities[7] and F reorganizations[8] dictates that Parent owns the Refund because

---

[5]    *See, e.g.*, Debtor's TSA Response at 2 (claiming that it is "obvious . . . that Debtor owns the Refund by virtue of Delaware law"); *id.* at 9 ("In fact, Debtor *owns* the Refund under Delaware law, regardless of the entity to which the Refund is paid.") (emphasis in original); *id.* at 14 ("Debtor's ownership of the Refund is unquestionably established by the terms of the merger agreement and Delaware statutory law."); *id.* at 17 ("Debtor succeeded to ownership of . . . the Refund[] under the merger agreement and Delaware law."). Far from being an obvious or unquestionable fact, this question of law is presently before the Court and has not been resolved.

[6]    As creatures of federal law disregarded entities must look to federal law to define their respective federal tax rights and liabilities. *McNamee v. Dep't. of the Treasury*, 488 F.3d 100, 111 (2d Cir. 2007) (rejecting the argument that Connecticut law controlled question of disregarded tax entity's liability); *Littriello v. United States*, 484 F.3d 372, 378 (6th Cir. 2007) (rejecting the plaintiff's argument "that the IRS must recognize the separate existence" of disregarded entities "as a matter of state law"); *Stearn & Co., L.L.C. v. United States*, 499 F. Supp. 2d 899, 903 (E.D. Mich. 2007) ("Stearn & Co.'s status as an LLC under Michigan law does not prevent the IRS from levying against its sole owner all unpaid federal employment taxes."). Treasury Regulation § 301.7701-1 states, for example,

> The Internal Revenue Code prescribes the classification of various organizations for federal tax purposes. *Whether an organization is an entity separate from its owners for federal tax purposes is a matter of federal tax law and does not depend on whether the organization is recognized as an entity under local law*.

26 C.F.R. § 301.7701-1(a)(1) (emphasis added); *see also generally McNamee*, 488 F.3d at 107-08 (discussing same).

[7]    *See Littriello*, 484 F.3d at 379 ("The federal government has historically disregarded state classifications of businesses for some federal tax purposes. . . . As courts have repeatedly observed, state laws of incorporation control various aspects of business relations; they may affect, but do not necessarily control, federal tax provisions."); *see also Browning Ferris Indus., Inc. & Subsidiaries v. United States*, 75 Fed. Cl. 591, 597 (2007) (holding that a disregarded entity had no independent standing to pursue a tax refund). In essence, when ASARCO NJ merged into ASARCO LLC – a disregarded entity that *never* had any independent tax status – it "was deemed to have distributed 'all of its assets and liabilities to its single owner [New ASARCO] in liquidation.'" *Browning Ferris Indus*, 75 Fed. Cl. at 597 (quoting Treas. Reg. § 301.7701-3(g)(1)(iii)). This "liquidation event" (becoming a disregarded entity) "constituted a termination of its existence" and precludes ASARCO NJ (or ASARCO LLC, which has always been disregarded) from pursuing the Refund. *See id*. Therefore, New ASARCO is the sole

ASARCO LLC has no independent standing for tax purposes. Because New ASARCO is the sole legal successor to ASARCO NJ as a result of the F reorganization,[9] New ASARCO is the proper owner of the Refund.[10] Contrary to Debtor's statements, this underlying disagreement between the parties concerning the controlling legal principles has yet to be resolved.

---

successor to ASARCO NJ's claim to the Refund, because ASARCO LLC never had, and does not currently have, independent standing to recover the Refund.

[8]  Cases specifically addressing F reorganizations show that ASARCO NJ functionally *became* New ASARCO when it merged into ASARCO LLC (which is, and has always been, a disregarded entity under federal law). In the *Berghash* case, for example, the Tax Court explained:

> [The F reorganization] encompass[es] only the simplest and least significant of corporate changes. The (F)-type reorganization presumes that the surviving corporation is the same corporation as the predecessor in every respect, except for minor or technical differences. For instance, the (F) reorganization typically has been understood to comprehend only such insignificant modifications as the reincorporation of the same corporate business with the same assets and the same stockholders surviving under a new charter either in the same or in a different State . . . .

*Berghash v. Commissioner*, 43 T.C. 743, 752 (1965), *aff'd*, 361 F.2d 257 (2d Cir. 1966) (emphasis added); *see also Matter of J.H.I., Inc.*, 39 B.R. 161, 163 (Bankr. D.N.J. 1984) ("These sections [concerning 'F' reorganizations] have been interpreted to mean that if the assets and the operation of the successor corporation are the same as the entity that paid the taxes then the carry back loss is available for tax purposes to the later reporting entity. Thus if the change of corporate entity is only one of name, or form, or place of organization the new entity succeeds to the rights of the prior entity."); *Performance Systems, Inc. v. United States*, 382 F. Supp. 525, 530 (D.C. Tenn. 1973) (F reorganization case) ("There is a change of corporate vehicles but not a change in the substance of the transferor corporation . . . . Thus, the identify of pre- and post-merger entities is so complete that for tax purposes the latter is the former."); *Estate of Stauffer v. Commissioner*, 48 T.C. 277, 297–98 (1967), *rev'd on other grounds*, 403 F.2d 611 (9th Cir. 1968) ("[T]here is such a complete identity between pre- and post-reorganization enterprises in an (F) reorganization that the acquiring corporation is to be treated *exactly* as the transferor corporation would have been treated in the absence of any reorganization.") (emphasis added). In short, the parent company becomes the "alter ego" of the pre-merger entity. *Performance Systems, Inc*. 382 F. Supp. at 531 (citing *Estate of Stauffer v. Comm'r*, 403 F.2d 611 (9th Cir. 1968)).

 Therefore, federal law dictates that in the case of an F reorganization that is effected through a merger, the surviving corporation (here, New ASARCO, because ASARCO LLC is disregarded and has no independent status) is the exact same corporation as the predecessor (ASARCO NJ) in every respect, except for *de minimis* differences. *Berghash*, 43 T.C. at 752 (1965). This complete identity between ASARCO NJ and New ASARCO is confirmed by the fact that, as Debtor concedes, the surviving corporation (New ASARCO) takes the same federal taxpayer identification number as the predecessor corporation. Debtor's TSA Response at 8.

[9]  This is confirmed by the Federal Treasury Regulation's own commentary. Pursuant to Treasury Regulation Section 1.368-2(b)(1)(iii), Example 2, a merger of a target corporation (*i.e*., ASARCO NJ) into a disregarded entity owned by another corporation (*i.e*., ASARCO LLC) is treated for federal income tax purposes as an F reorganization of the merged target corporation into the corporate owner of the disregarded entity (*i.e*., New ASARCO).

[10]  *See, e.g.*, *Seaboard Air Line Ry v. United States*, 256 U.S. 655 (1921) (when a corporation that is entitled to a refund ceases to exist as a result of a merger, it is proper for the claim for refund to be made by the successor corporation (here, New ASARCO)); *see also* Rev. Rul. 54-17, 1954-1 C.B. 160 (where a corporation that overpaid its federal income taxes is merged into a successor corporation, a claim for refund or credit should be executed by the successor corporation).

DEFENDANTS AMERICAS MINING CORPORATION AND ASARCO INCORPORATED'S
REPLY TO PLAINTIFF ASARCO LLC'S RESPONSE BRIEF REGARDING THE
TAX SHARING AGREEMENT

PAGE 5

The purpose of Parent's TSA Brief was to explain how the TSA and the Amendment are consistent with federal law, which provides that New ASARCO – as the parent of ASARCO LLC, a wholly-owned, disregarded entity – is entitled to recover all tax refunds that would otherwise have accrued to ASARCO NJ prior to the F reorganization with ASARCO LLC. As explained in Parent's TSA Brief, the Amendment was executed after ASARCO NJ requested the Refund from the Internal Revenue Service ("IRS"), and in anticipation of ASARCO NJ's F reorganization into New ASARCO. As a result, the parties executed the Amendment at least in part as a way of addressing the Refund in light of the F reorganization and ASARCO NJ's new status as a disregarded entity without any independent tax status or standing.

The Amendment provides that when the Refund is received by Parent ("New ASARCO or any member of the AMC Subgroup"[11]) and certain professional fees are deducted, it will be distributed to ASARCO LLC. Amendment at ¶ 7(a). Although Debtor claims that paragraph 7 was drafted as a "mere contingency" in case the Refund were paid to Parent, Parent disagrees with that interpretation. If the parties did not understand and expect that Parent would be receiving the Refund as a result of ASARCO NJ's new disregarded-entity status (and the undisputed fact that ASARCO LLC was always disregarded), there would have been no need to contractually agree that ASARCO LLC was entitled to receive refunds (minus certain deductions) from Parent. Moreover, if the parties had anticipated the possibility that ASARCO LLC would have received the Refund, despite the fact that it has never had independent tax standing, it is reasonable to assume that they would have addressed the issue of paying professional fees related to that Refund. Drafting and executing the Amendment, specifically addressing how to distribute the Refund in light of ASARCO NJ's F reorganization into New

---

[11] The AMC Subgroup includes New ASARCO and AMC, but does not include ASARCO LLC. *See* Amendment at ¶¶ 2, 4.

DEFENDANTS AMERICAS MINING CORPORATION AND ASARCO INCORPORATED'S
REPLY TO PLAINTIFF ASARCO LLC'S RESPONSE BRIEF REGARDING THE
TAX SHARING AGREEMENT

PAGE 6

ASARCO, indicates that the parties were acting in accordance with the legal and economic realities of ASARCO LLC's disregarded entity status.[12]

The Debtor's argument that it owns the Refund under state law without reference to the Amendment, and without reference to the laws governing F reorganizations and disregarded entities, would therefore render its paragraph 7 pointless and should be rejected.  Because federal law dictates that Parent will receive the Refund (because New ASARCO succeeded to ASARCO NJ's tax rights and liabilities, and because ASARCO LLC has always been a disregarded entity), Debtor's *only* legal claim to the Refund derives from the TSA and the Amendment.  Debtor, by relying on inapposite state law that does not apply to F reorganizations or disregarded entities, clearly seeks to avoid the terms of the TSA and the Amendment because they *also* require Debtor to pay professional fees related to the Refund and to pay its share of federal taxes for 2007.[13]

**B.    ASARCO NJ's prior membership in the ASARCO NJ Consolidated Group does not change the Court's analysis.**

Debtor argues that there are "two separate and distinct affiliated groups of corporations," the ASARCO NJ Consolidated Group (which was terminated in 2000, before the TSA was executed, when the ASARCO NJ shares were transferred to AMC), and the AMC Consolidated Group, of which AMC is the common parent.  Debtor's TSA Response at 3-4.  Debtor relies on this fact to argue that because "[t]he members of the ASARCO NJ Consolidated Group never

---

[12] Parent maintains that the Amendment is unambiguous in its acknowledgement that New ASARCO would receive the Refund following ASARCO NJ's F reorganization into New ASARCO. Debtor also urges that the Amendment is unambiguous, but offers a materially different interpretation of paragraph 7 of the Amendment. *See* Debtor's TSA Response at 9. To the extent Debtor's "mere contingency" argument is reasonable (which Parent contests), it only operates to create an ambiguity in the Amendment, thus precluding summary judgment. *See* Parent's TSA Brief at 9 n.14 and authorities cited therein.

[13] Debtor does not dispute that the TSA and Amendment require Debtor to compensate AMC for it share of the 2007 taxes.

DEFENDANTS AMERICAS MINING CORPORATION AND ASARCO INCORPORATED'S
REPLY TO PLAINTIFF ASARCO LLC'S RESPONSE BRIEF REGARDING THE
TAX SHARING AGREEMENT

PAGE 7

entered into a tax sharing agreement," . . . "the TSA is wholly inapplicable to the ASARCO NJ Consolidated Group" and does not bear on the question of who owns the Tax Refund. *Id.* at 4-5.

Debtor's argument is flawed because it fails to acknowledge that ASARCO NJ is a party to the TSA,[14] and the TSA specifically includes all of ASARCO NJ's direct and indirect subsidiaries.[15] Whether or not the ASARCO NJ Consolidated Group was technically defunct when the TSA was executed, ASARCO NJ is a party to the TSA and the Amendment, and any rights and obligations ASARCO NJ had upon execution (including the Refund) are relevant to any analysis under those documents. As Parent's TSA Brief and summary judgment briefing explains, the Amendment confirms the reality under federal law that following ASARCO NJ's F reorganization into ASARCO LLC (which was technically a merger into New ASARCO because ASARCO LLC was disregarded), neither ASARCO NJ nor ASARCO LLC had independent standing to collect the Refund. Therefore, the parties agreed that Parent would distribute the Refund to Debtor after the deduction of certain professional fees.

Debtor's analysis of paragraph 3 of the TSA also ignores the significance of the Amendment. Debtor argues that paragraph 3 limits the TSA's applicability to "tax attributes" acquired only during years when ASARCO NJ was consolidated with the AMC Consolidated Group. But even if this were true, and ASARCO NJ had independent status to recover the Refund under the TSA for years prior to 2003, the TSA's language does not end the analysis because it only addresses the parties' status prior to the F reorganization. The Amendment at

---

[14] AMC and ASARCO NJ (the entity to which the Refund is attributable) executed the TSA out of a "desire to establish a method for the allocation and payment of taxes and the accounting therefor . . . ." TSA, Recitals ¶ 3.

[15] "Asarco Subgroup" is defined to include ASARCO NJ, and its direct and indirect subsidiaries that are includable corporations, within the meaning of Section 1504(a) and (b) of the Internal Revenue Code. TSA at ¶ 1(b). The Amendment defined "ASARCO LLC Subgroup" to include ASARCO LLC, and all its direct and indirect subsidiaries that are includible corporations with in the meaning of Section 1504(a) and (b). Amendment at ¶ 2.

least implicitly recognizes that any independent status was lost as a result of ASARCO NJ's F reorganization into New ASARCO (particularly in light of the fact that ASARCO LLC has always been a disregarded entity, and thus has never had tax status independent from New ASARCO). Therefore, the Amendment is consistent with the Parent's argument that under federal law any Refund attributable to ASARCO NJ would accrue to Parent because neither ASARCO NJ nor ASARCO LLC possessed any continuing independent standing for federal tax purposes. Absent the Amendment, which allows ASARCO LLC to collect any refund "claimed by" ASARCO NJ prior to the F reorganiztion, ASARCO LLC would have no claim at all to the Refund. If ASARCO LLC had a state law right to collect these refunds, there would be no point to drafting this contractual provision.

### III.
### CONCLUSION AND PRAYER

As set forth in prior briefing, Parent relies on federal law pertaining to F reorganizations and disregarded entities that instruct that Parent owns the Refund, and that ASARCO LLC has no independent tax status to claim rights to the Refund. Parent argues in its TSA Brief that this reality is acknowledged by the parties' agreement in the Amendment. In contrast, Debtor's reliance on inapposite Delaware state law – and cases that do not consider the special circumstance of F reorganizations or disregarded entities – do not support its claim to the Refund. Based on the authorities previously supplied to the Court, Debtor's right to the Refund arises only by virtue of the TSA and the Amendment, which also allows Parent to deduct certain professional fees related to the Refund and requires Debtor to pay its own share of taxes to Parent.[16]

---

[16]     Parent also disagrees with Debtor's arguments with regard to set-off, recoupment and equity raised in Debtor's TSA Response. Parent believes, however, that its prior briefing and the case law cited therein is sufficient for the Court to address whether and to what extent Parent has a right of set-off or recoupment, and whether

Parent's summary judgment motion is entirely consistent with federal law and the parties' agreement, and should be granted. Parent respectfully prays that the Court grant Parent's motion for summary judgment, and award the Refund to Parent.

Dated: August 4, 2008.

**HAYNES AND BOONE, LLP**

/s/ Trey A. Monsour
Charles A. Beckham, Jr.
State Bar No. 02016600
Brooks Hamilton
State Bar No. 24046015
1 Houston Center
1221 McKinney, Suite 2100
Houston, Texas 77010
713-547-2000

-and -

Trey A. Monsour
State Bar No. 14277200
Frances A. Smith
State Bar No. 24033084
901 Main Street, Suite 3100
Dallas, Texas 75202
214-651-5000

-and –

Kendyl T. Hanks
State Bar No. 24032273
1221 Avenue of the Americas
26th Floor
New York, NY 10020
212-659-4972

**COUNSEL FOR AMERICAS MINING CORPORATION AND ASARCO INCORPORATED**

---

Debtor's attempt to claim the Refund without reference to the TSA or Amendment and avoid paying its own taxes as required by the TSA is inconsistent with equitable principles.

DEFENDANTS AMERICAS MINING CORPORATION AND ASARCO INCORPORATED'S REPLY TO PLAINTIFF ASARCO LLC'S RESPONSE BRIEF REGARDING THE TAX SHARING AGREEMENT

PAGE 10

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing Response was served (i) via electronic means through transmission facilities from the Court upon those parties authorized to participate in and access the Electronic Filing System for the Southern District of Texas and (ii) via e-mail and first class U.S. Mail, postage prepaid and properly addressed, on those individuals or entities listed below on the 4th day of August, 2008.

/s/ Trey A. Monsour
Trey A. Monsour

Jack L. Kinzie
James R. Prince
Timothy W. Mountz
William D. Mann, Jr.
**BAKER BOTTS L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201-2980
Email:  jack.kinzie@bakerbotts.com
   jim.prince@bakerbotts.com
   t.mountz@bakerbotts.com
   bill.mann@bakerbotts.com

Tony M. Davis
**BAKER BOTTS L.L.P.**
One Shell Plaza
Houston, Texas 77002
Email:  tony.davis@bakerbotts.com

Shelby A. Jordan
Harlin C. Womble
Nathaniel Peter Holzer
**JORDAN, HYDEN, WOMBLE, CULBRETH & HOLZER, P.C.**
Suite 900, Bank of America
500 North Shoreline
Corpus Christi, Texas 78471
Email:  sjordan@jhwclaw.com
   hwomble@jhwclaw.com
   pholzer@jhwclaw.com

**COUNSEL FOR ASARCO, LLC**

Sander L. Esserman
Jacob Newton
**STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, PC**
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Email:  esserman@sbep-law.com
   newton@sbep-law.com

**COUNSEL FOR OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF DEBTOR SUBSIDIARIES AND FOR DEFENDANTS LAC D'AMIANTE DU QUEBEC LTEE, LAKE ASBESTOS OF QUEBEC, LTD., LAQ CANADA, LTD., CAPCO PIPE COMPANY, INC., AND CEMENT ASBESTOS PRODUCTS COMPANY**

John H. Tate
Debra L. Innocenti
**OPPENHEIMER, BLEND, HARRISON & TATE, INC.**
711 Navarro, Sixth Floor
San Antonio, Texas 78205
Email:  jht@obht.com

**COUNSEL FOR DEFENDANTS LAC D'AMIANTE DU QUEBEC LTEE, LAKE ASBESTOS OF QUEBEC, LTD., LAQ CANADA, LTD., CAPCO PIPE COMPANY, INC., AND CEMENT ASBESTOS PRODUCTS COMPANY**

DEFENDANTS AMERICAS MINING CORPORATION AND ASARCO INCORPORATED'S
REPLY TO PLAINTIFF ASARCO LLC'S RESPONSE BRIEF REGARDING THE
TAX SHARING AGREEMENT

PAGE 11

Deborah D. Williamson
Matthew S. Parkin
**COX SMITH MATTHEWS INCORPORATED**
112 E. Pecan Street, Suite 1800
San Antonio, Texas 78205
Email:  ddwilliamson@coxsmith.com
            msparkin@coxsmith.com

**COUNSEL FOR DEFENDANTS ENTHONE, INC., EI LIQUIDATION, INC., AND OMI INTERNATIONAL CORPORATION**

Derek J Baker
**REED SMITH LLP**
1650 Market St, Ste 2500
One Liberty Place
Philadelphia, PA 19103-7301
Email:  dbaker@reedsmith.com

Edward J Estrada
James C. McCarroll
**REED SMITH LLP**
599 Lexington Ave
New York, NY 10022
Email:  eestrada@reedsmith.com
            jmccarroll@reedsmith.com

Louis Raymond Strubeck, Jr
**FULBRIGHT & JAWORSKI**
2200 Ross Ave, Suite 2800
Dallas, TX 75201
Email:  lstrubeck@fulbright.com

**COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF ASARCO LLC**

-18899_3.DOC